UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BEN JONES,

        Plaintiff,                                    Hon. Janet T. Neff

v.                                                   Case No. 1:10-CV-535

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

### REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 56 years of age as of the date of the ALJ's decision.  (Tr. 21, 73).  Plaintiff possesses an eighth grade education and worked previously as a parts washer and foundry worker.  (Tr. 248, 275).

Plaintiff applied for benefits on January 24, 2006, alleging that he had been disabled since June 1, 2005, due to the "shakes."  (Tr. 73-75, 79).  Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 22-72).  On October 26, 2007, Plaintiff appeared before ALJ James Prothro, with testimony being offered by Plaintiff and vocational expert, Michelle Ross.  (Tr. 243-81).  In a written decision dated April 22, 2008, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act.  (Tr. 13-21).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.  (Tr. 4-7).  Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## **RELEVANT MEDICAL HISTORY**

On March 1, 2006, Plaintiff was examined by Dr. R. Scott Lazzara. (Tr. 199-201). Plaintiff reported experiencing "progressive intermittent trembling over the past few years...mostly involving his left hand." (Tr. 199). Plaintiff reported that he "has never sought evaluation for this" and "has never been treated for it." (Tr. 199). Plaintiff "denie[d] a history of diabetes," but did "admit to a prior history of alcohol abuse." (Tr. 199). Plaintiff reported that he had not worked since being laid off the previous year. (Tr. 199). Plaintiff reported that "he does get occasional cramping in his hand when he uses a hammer or screwdriver," but "has no difficulty buttoning or zipping." (Tr. 199).

The results of a mental status examination were "normal" and Plaintiff exhibited "appropriate" insight and judgment. (Tr. 200). The results of a physical examination were likewise unremarkable. (Tr. 200). The doctor reported "no evidence of joint laxity, crepitance, or effusion." (Tr. 200). Plaintiff's "grip strength [was] intact" and his "dexterity [was] unimpaired." (Tr. 200). Plaintiff was able to "pick up a coin, button clothing, and open a door." (Tr. 200). Plaintiff exhibited "no difficulty getting on and off the examination table, no difficulty heel and toe walking, no difficulty squatting, and no difficulty hopping." (Tr. 200). Plaintiff also exhibited "full" range of motion in all his joints. (Tr. 200). Plaintiff exhibited "normal" muscle strength and tone. (Tr. 200). There was no evidence of sensory or reflex impairment. (Tr. 200). Romberg testing[1] was negative and Plaintiff walked with a "normal" gait. (Tr. 200). The doctor diagnosed Plaintiff with "intermittent trembling." (Tr. 201). The doctor further observed the following:

---

[1] Romberg test is a neurological test designed to detect poor balance. *See* Romberg Test, available at http://www.mult-sclerosis.org/RombergTest.html (last visited on July 26, 2011). The patient stands with her feet together and eyes closed. The examiner will then push her slightly to determine whether she is able to compensate and regain her posture. *Id.*

> Whether this is due to a benign resting tremor that is intermittent in nature is a possibility. I do not find any evidence of Parkinson's Disease or encephalopathy. Of concern is his elevated blood pressure and whether this is causing intermittent trembling is a possibility. His history does not appear suggestive for diabetes or hypoglycemic episodes however this would need to be ruled out as well. Functionally he had no difficulty doing orthopedic maneuvers or manipulative tasks, but he did not have a tremor today. Of note he did not have any evidence of hepatitis or hepatosplenomegaly. He had no evidence of encephalopathy. At this point blood pressure control would be helpful, otherwise physically he appears stable overall.

(Tr. 201).

On April 19, 2006, Plaintiff participated in an electrocardiogram examination the results of which were unremarkable. (Tr. 203).

On June 12, 2006, Plaintiff participated in a consultive examination conducted by Wayne Kinzie, Ph.D. and Richard King, Ed.D. (Tr. 213-15). The examiners noted that "during the evaluation session, [Plaintiff] was alert to the various testing cues" and "was able to follow direction and instructions with no observed difficulty." (Tr. 213). Plaintiff participated in intellectual functioning testing, the results of which revealed that he possessed a Verbal IQ of 66, a Performance IQ of 72, and a Full Scale IQ of 66. (Tr. 214). The examiners reported that the results of this test "is considered to be a valid indicator of [Plaintiff's] current level of intellectual functioning" and "[t]here were no extraneous circumstances known to the examiner nor behavioral observations, which would indicate otherwise." (Tr. 213). Plaintiff was diagnosed with cognitive disorder, not otherwise specified. (Tr. 215). The examiners further observed that while Plaintiff's "intellectual limitations are significant...he has been able to maintain employment through the years." (Tr. 214).

On June 19, 2006, J. Michael McCarthy, Ed.D. completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 220-33). The doctor concluded that

5

Plaintiff satisfied the Part A criteria for Section 12.02 (Organic Mental Disorders) of the Listing of Impairments. (Tr. 220-29 ). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for this particular Listing. (Tr. 230). Specifically, the doctor concluded that Plaintiff experienced mild restrictions in the activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and never experienced extended episodes of decompensation. (Tr. 230).

Dr. McCarthy also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 216-18). Plaintiff's abilities were characterized as "markedly limited" in two categories and "moderately limited" in two categories. (Tr. 216-17). With respect to the remaining 16 categories, however, the doctor reported that Plaintiff was "not significantly limited" or that there existed "no evidence of limitation." (Tr. 216-17). Dr. McCarthy concluded that:

> Claimant has a significant work history in a foundry and factory. He does not allege mental problems, but he complains of difficulty paying attention. Intellectual evaluation shows low intellectual functioning, but his ADL and history indicate that he functions adequately. Testing demonstrated no particular difficulties in maintaining attention and understanding instructions.
>
> The claimant is considered able to understand, remember, and carry out simple instructions. He can make appropriate judgments and simple work related decisions. There are no particular difficulties or deficiencies in interpersonal skills, and he is able to interact appropriately in work situations. His limited intellectual abilities may represent a moderate impairment in his ability to adjust to changes in the work setting.

(Tr. 218).

On September 12, 2007, Plaintiff was examined at St. Mary's Health Care. (Tr. 237). Plaintiff reported that he was experiencing anxiety, lower abdominal pain, lower back pain, and constipation. (Tr. 237). The results of a physical examination revealed that Plaintiff was experiencing high blood pressure, but were otherwise unremarkable. (Tr. 237). Plaintiff reported to the doctor that "he does not think his drinking is a problem; however, his wife does feel that it is a problem." (Tr. 237). Plaintiff reported that he "has never been on [high blood pressure] medication." (Tr. 237). Plaintiff was prescribed high blood pressure medication and scheduled to see a counselor regarding his anxiety. (Tr. 237). Plaintiff was also instructed "that he needs to increase his fruits and vegetables, and needs to drink more water." (Tr. 237). Plaintiff was also prescribed medication to treat his anxiety. (Tr. 237).

At the Administrative Hearing, Plaintiff testified that he was not taking his high blood pressure medication or his anxiety medication. (Tr. 251-52). When asked by the ALJ why he was unable to work, Plaintiff responded, "I don't know." (Tr. 252). When asked a second time, Plaintiff stated that he was unable to work because "my back hurts." (Tr. 252-53). Plaintiff also reported experiencing "cramps" in his left hand. (Tr. 253). Plaintiff reported that he drinks alcohol "maybe once a week" and "rarely" uses marijuana. (Tr. 254). Plaintiff also reported that during the previous year he had been seeking employment, specifically "easy work, not any more hard straining work." (Tr. 271).

## **ANALYSIS OF THE ALJ'S DECISION**

The ALJ determined that Plaintiff suffers from (1) a cognitive disorder, not otherwise specified, and (2) a history of intermittent tremors of the hands, severe impairments that whether

considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 15-18). The ALJ concluded that Plaintiff, despite his impairments, was able to perform his past relevant work as a parts washer. (Tr. 20). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a Plaintiff suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience,

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point plaintiff bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform medium work[3] subject to the following limitations: (1) Plaintiff can only occasionally climb ramps, stairs, ladders, ropes, or scaffolding; and (2) he can understand and carry out only short and simple instructions. (Tr. 18). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence. A vocational expert testified that if Plaintiff was limited to the extent recognized by the ALJ's RFC determination, he would be able to perform his past relevant work as a parts washer. (Tr. 275-76). Relying on this testimony, the ALJ determined that Plaintiff was not disabled.

---

[3] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c).

        a.        The ALJ's Decision that Plaintiff does not Satisfy Section 12.05 of the Listing of Impairments is Supported by Substantial Evidence

Plaintiff asserts a single issue on appeal,[4] that he is entitled to disability benefits because he satisfies the requirements of section 12.05 (Mental Retardation) of the Listing of Impairments. The Court notes that Plaintiff bears the burden to demonstrate that he satisfies the requirements of a listed impairment. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007) (the claimant bears the burden of proof through step four of the sequential disability determination procedure); *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 527 (6th Cir., Aug. 26, 2003) (claimant bears the burden of establishing that he satisfies a listed impairment). Section 12.05 of the Listing provides, in relevant part, the following:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A.    Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> OR

---

[4] Plaintiff's brief also contains the conclusion that "[t]he ALJ did not have substantial evidence to support his finding that Plaintiff could have performed medium work." (Dkt. #11 at 8). Plaintiff has failed, however, to develop or articulate in any way the basis for this conclusion despite having an affirmative obligation to more clearly articulate the basis for his claims of error. *See, e.g., Porzillo v. Department of Health and Human Services*, 369 Fed. Appx. 123, 132 (Fed. Cir., Mar. 12, 2010) (claimant "waives any arguments that are not developed"); *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 519, 537 n.25 (10th Cir. 2000) (arguments "superficially" developed are waived); *Financial Resources Network, Inc. v. Brown & Brown, Inc.*, 2010 WL 4806902 at *30 n.29 (D. Mass., Nov. 18, 2010) (same). Thus, Plaintiff has waived this particular argument. The Court further notes that this argument is without merit as the record contains substantial evidence supporting the ALJ's RFC determination.

>   B.  A valid verbal, performance, or full scale IQ of 59 or less;
>
>   OR
>
>   C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;
>
>   OR
>
>   D.  A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
>       1.  Marked restriction of activities of daily living; or
>
>       2.  Marked difficulties in maintaining social functioning; or
>
>       3.  Marked difficulties in maintaining concentration, persistence or pace; or
>
>       4.  Repeated episodes of decompensation, each of extended duration.

20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.05 (2008).

Plaintiff asserts that he satisfies section 12.05(C). As noted above, testing conducted in June 2006, revealed that Plaintiff possessed a verbal IQ of 66, a performance IQ of 72, and a full-scale IQ of 66. Plaintiff also suffers from a physical impairment which imposes additional and significant work-related limitations, as evidenced by the ALJ's RFC determination.

While Plaintiff satisfies the criteria articulated in subsection (C), he must also satisfy the requirements articulated in the introductory paragraph of Section 12.05. 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00(A) ("[i]f your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment

meets" section 12.05). Specifically, Plaintiff must establish that he satisfies the "diagnostic description" of mental retardation articulated in the introductory paragraph of Section 12.05. *See, e.g., West v. Comm'r of Soc. Sec.*, 240 Fed. Appx. 692, 697-98 (6th Cir., July 5, 2007) (to satisfy Section 12.05, the claimant must demonstrate that he experienced deficiencies in adaptive functioning prior to attaining the age of 22); *Cooper v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 450, 451 (6th Cir., Feb. 15, 2007) (same); *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (same).

The record contains no evidence that Plaintiff experienced deficiencies in adaptive behavior or suffered from mental retardation prior to the age of 22 or at anytime thereafter. Neither Plaintiff's care providers nor any of the medical professionals who examined the record in this case concluded that Plaintiff satisfied the "diagnostic description" of mental retardation articulated in the introductory paragraph of Section 12.05 or experienced deficiencies in adaptive functioning prior to attaining the age of 22.

The fact that Plaintiff has maintained employment throughout much of his adult life is also inconsistent with the conclusion that he is mentally retarded. Such indicates that Plaintiff did not experience deficiencies in adaptive behavior prior to age 22, or thereafter for that matter. *See Burrell v. Comm'r. of Soc. Sec.*, 2000 WL 1827799 at *2 (6th Cir., Dec. 8, 2000) (no evidence of a deficit in adaptive functioning where claimant "remained fairly active, maintains an interest in his household, and enjoys apparent satisfactory relationships with family members"); *Adkins v. Astrue*, 226 Fed. Appx. 600, 605 (7th Cir., Apr. 10, 2007) (claimant possessing an 8th grade education and "gainfully employed until the age of forty-one" not disabled under section 12.05); *Wright v. Astrue*, 2011 WL 1486208 at *7 (N.D. Ind., Mar. 31, 2011) (when assessing whether claimant satisfies section 12.05, the court must consider more than IQ scores alone and must also consider claimant's

work history and other activities); *Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000) (claimant who possessed a 10th grade education, and who worked as an oil-changer, not disabled under section 12.05); *Williams v. Sullivan*, 970 F.2d 1178, 1185 (3rd Cir. 1992) (claim of mental retardation contradicted by the fact that claimant was able to "maintain a job for most of his adult life"); 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00(D) (recognizing that when evaluating mental disorders, a claimant's work history is "particularly useful" in assessing the extent of impairment). In this respect, the Court notes that Plaintiff acknowledged that he stopped working because he was laid off, not as a result of any impairment or limitation from which he might suffer.

As discussed above, the evidence of record does not support Plaintiff's position. Moreover, Plaintiff has identified no evidence in support of his position. Instead, Plaintiff asks the Court to ignore the Sixth Circuit authority identified above requiring him to demonstrate that he experienced deficiencies in adaptive functioning prior to attaining the age of 22. The Court declines Plaintiff's invitation to reject controlling Sixth Circuit authority on this question. Plaintiff next argues that this Court should find that he satisfies the Listing in question "because he attended a segregated school which was (as all such schools were) fundamentally deficient in all ways." While the Court empathizes with anybody who is not afforded equal or quality educational opportunities, it hardly follows that because Plaintiff attended a segregated or allegedly inferior school that he is mentally retarded.

Accordingly, the Court concludes that substantial evidence supports the ALJ's determination that Plaintiff does not satisfy this Section 12.05 of the Listing of Impairments.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: August 12, 2011         /s/ Ellen S. Carmody
                              ELLEN S. CARMODY
                              United States Magistrate Judge